EDWARD G. KOLKMAN, Plaintiff, *v.* ANDREW H. ESHELMAN and Others, Defendants.

Supreme Court, Erie County, June 29, 1928.

**Liens — mechanic's lien — defendant sold property to third party for erection of creamery — purchaser after making down payment orally agreed balance would be paid in few days — purchaser went into possession and erected building, but plans collapsed, leaving unpaid bills owing materialmen and supply men who filed mechanics' liens against property — building was put up for sole benefit of purchaser and defendant's land cannot be subjected to lien by reason of having consented to erection of building — Lien Law, § 3, has no application — lienors are entitled to attach whatever equity purchaser had in premises — purchaser's equity consisted of right to conveyance of land on payment to defendant of reasonable value thereof — on sale lienors should be subject to owner's right to be paid price agreed upon — description, which identifies property, sufficient to validate lien — court has power to confine and limit plaintiff's lien to particular parcel on which creamery stands — amounts owing workmen are entitled to preference over contractors and materialmen, pursuant to Lien Law, § 56.**

In this action to foreclose a mechanic's lien, it appears that the defendant sold a 100-foot strip of his property to a third party who sought it for the erection of a creamery. The proof shows that after defendant put a price of five dollars

per running foot on the property, the purchaser paid twenty-five dollars down and, under an agreement which was oral, stated the balance would be paid in a few days. The purchaser went into possession of the property, proceeding to erect the building, but made no further payments to defendant. Subsequently the purchaser's plans collapsed, leaving unpaid bills, owing material and supply men who filed liens against the property. The proof further shows that defendant, who lived in the vicinity of the creamery, saw the work progress, but raised no objection to what was being done.

Since the creamery was put up for the sole benefit of the purchaser of the land, under the contract with him alone, and defendant was accepting no benefit for himself or to his land by reason of the improvement, his land cannot be subjected to the plaintiff's lien by reason of defendant having consented to the erection of the building.

Section 3 of the Lien Law, which gives a lien to contractors and materialmen performing labor or furnishing materials for the improvement of real property, with the consent of the owner thereof, has no application, for consent, as used in the statute, means the owner must either be an affirmative factor in procuring the improvement, or, having control and possession of the premises, assent in the expectation that he will reap the benefit of it.

However, the lienors are entitled to attach whatever equity the purchaser had in the premises, which, for the purposes of this case, includes a right of conveyance of the land on which the creamery stands on the payment to defendant of the reasonable value thereof, which is the sum of five dollars per running foot as established by the consent of the parties; therefore, in the event of the sale of the property to satisfy the claims of lienors, the sale should be made subject to the right of defendant to be paid the five dollars per running foot for the land.

The lien is valid where the notice sufficiently identifies the property against which the lien is established.

The court has the power and authority by its judgment to confine and limit plaintiff's lien to the particular parcel on which the creamery stands, and so directs.

Liens appearing to be for amounts due and owing workmen are entitled to a preference over contractors and materialmen, under the provisions of section 56 of the Lien Law, and the judgment in this action should so provide.

ACTION to foreclose a mechanic's lien.

*Joseph F. Seitz*, for the plaintiff.

*Thomas H. Powell*, for the defendant John H. Black Company.

*McGregor & Dale*, for Bliss Steel Products Corporation.

*O'Clyde Joslyn*, for the defendants Wittinger Froger and Rolla Post.

*Carlton E. Ladd* [*Wellington Wetherbee* of counsel], for the defendant Fogelsenger.

*LaFay Wilkie*, for the defendant Andrew Eshelman.

*George Weyand*, for the defendant Eichner.

Supreme Court, June, 1928.                    [Vol. 132

CHARLES B. WHEELER, Official Referee.   None of the essential facts in the case are in dispute.   The only questions involved are questions of law growing out of the peculiar circumstances of the case.

The defendant Andrew Eshelman is the owner of a tract of land consisting of some ten acres located in the town of Clarence, Erie county.   A Mr. Eichner called on him and stated he wished to purchase some 100 feet of land fronting on the highway and off the end of the property.   The two walked to the parcel desired and paced off as near as they could 100 feet.   Eichner stated he wished the land for the purpose of erecting a creamery on it, and asked the price.   Eshelman told him he would sell for five dollars per front foot.   This was satisfactory to Eichner.   It was stated the deal was to be a cash transaction.   Eichner paid twenty-five dollars down and stated he would pay the balance of the purchase price in a few days, but wished a survey to establish the line, and further stated he would send a surveyor to the property in a few days.   The surveyor did not arrive, however, for some weeks after the talk between Eichner and Eshelman.   In the meantime, however, Eichner went into possession of the land, and dug the foundations for the creamery, and proceeded with the erection of the building.   He made no further payment to Eshelman beyond the twenty-five dollars paid at their first meeting.   When it was discovered the building was over the one-hundred-foot line, Eichner and Eshelman had another talk, in which Eshelman stated he would sell additional land not exceeding seventy-five feet on the highway for the same price of five dollars per foot frontage.   Eichner made repeated promises to pay the balance of the purchase price, but failed to keep his promises.   No written contract of any kind was entered into between Eichner and Eshelman.   The agreement, such as it was, was entirely verbal.   In the meantime the erection of the creamery proceeded, and the building was under roof, when Eichner's plans appear to have collapsed, and the man committed suicide, leaving unpaid bills, owing material and supply men, who filed liens against the property.   The plaintiff seeks to foreclose one of them, making Eshelman and other lienors parties defendant.   It should be here stated that Eshelman lived near the creamery in process of erection.   He saw the work going on and occasionally visited it and raised no objection to what was being done.

The first question presented is as to the rights and interest of Mr. Eshelman.   The lienors contend that his rights are subordinate to their own; that the improvements were placed on his property with his consent, and that their respective liens are superior to

any claim the owner has for the unpaid balance of the purchase price. Counsel for Eshelman contends that in the event of a sale Eshelman should first be paid the balance due on the purchase price for the land and that the liens filed only attach to such an equitable interest as Eichner had which at most was the right to a conveyance on the payment of the agreed purchase price.

Perhaps the first inquiry is whether the erection of the creamery was made by such a consent on Eshelman's part as subjected the property in question to the lien of the parties supplying labor and materials.

Eshelman took no part in the erection of the creamery. He did not induce the various lienors to supply the labor or materials that went into it. This was done solely at the instance and by virtue of contracts between the lienors and Eichner. There was no expectation that the erection of the creamery was in any way to benefit Eshelman or his property, but on the contrary by virtue of an understanding that Eshelman was to convey to Eichner, who was to pay for the land he required. There was no privity in the enterprise of any kind between Eichner and Eshelman.

It is true that section 3 of the Lien Law provides that a contractor, subcontractor, laborer or materialman who performs labor or furnishes material for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien for the same. The lienors in this case assert their liens on the ground the owner consented to the improvement. The meaning of the word " *consent* " as used in this section has been the subject of judicial construction.

In the case of *Rice* v. *Culver* (172 N. Y. 60) Judge CULLEN said: " The question to be determined in this case is the meaning to be given to the term ' consent.' Doubtless, in a certain sense of the word, the appellant did consent to the performance of the work done on his property * * *. There is a marked distinction between the passive acquiescence of an owner in that he knows the improvements are being made, improvements which in many cases he has no right to prevent, and his actual and *express consent or requirement* that the improvement shall be made. It is the *latter* that constitutes the consent mentioned in the statute. To fall within that provision the owner must either be an affirmative factor in procuring the improvement to be made, or having possession and control of the premises assent to the improvement in the expectation that he will reap the benefit of it."

To the same general effect is the later case of *Beck* v. *Catholic University* (172 N. Y. 387).

Measured by the rule laid down in these cases we are unable to see how the land of Mr. Eshelman can be subjected to the liens of the plaintiff and others by reason of having consented to the erection of the creamery. It was put up for the sole benefit of Eichner and under contracts with him alone. Eshelman was expecting no benefit for himself or to his land by reason of the improvement. Eichner was the party in possession.

It does not follow, however, that the lienors are entirely without remedy and can assert no lien on the property. We are of the opinion that their liens attach to whatever equity Eichner had in the premises. What then is that equity? It is true that the verbal contract made to convey between Eichner and Eshelman being oral is incapable of enforcement as a contract. As a contract it must be deemed void for not being in writing. Nevertheless Eshelman without objection permitted Eichner to enter into possession and to proceed with the erection of the creamery, and to expend some thousands of dollars with the expectation that Eshelman would convey on the payment of the purchase price. Having permitted this we think Eshelman would be chargeable with what would be tantamount to fraud were he to refuse to convey. His conduct would not only be most reprehensible, but would sustain the charge of very bad faith on his part, and we are confident that equity would relieve Eichner from the consequences of such a course of conduct on the part of Eshelman in a proper action. Such an action would be based, not on the oral contract, but on the ground of unconscionable conduct by Eshelman inducing a large expenditure of money to the damage of Eichner.

Equity is always eager to prevent fraud and promote common justice. Therefore, we reach the conclusion that notwithstanding the lienors cannot assert a lien by virtue of the provisions of section 3 of the Lien Law, and although the verbal contract for sale as such is unenforcible and void, nevertheless Eichner under the circumstances of the case had an equitable interest in the property to which the liens of contractors and materialmen attached. That equitable interest consisted of a right to a conveyance of the land on which the creamery stands on the payment to Eshelman of the reasonable value of the land, which for the purposes of this case we think is the sum of five dollars per foot front as established by the consent of Eshelman and Eichner. This view of the situation seems to be fully sustained by the Court of Appeals in the case of *McKinley* v. *Hessen* (202 N. Y. 24). (See, also, *Canda* v. *Totten*, 157 N. Y. 281.)

Therefore, it follows that in case of a sale of the property to satisfy the claims of lienors the sale should be made subject to

the right of Eshelman to be paid the five dollars per front foot for the land.

Eshelman in this action recognizes these equities. He has never refused to convey on payment for the land. His counsel agrees in his brief, and is willing to stipulate, that a judgment may be entered herein decreeing the sale of the building together with enough land to make the same available on the site to the extent of 175 feet frontage on the highway, measured from the center of the bridge, the point of beginning shown in the survey, for which Eshelman is to have a prior lien upon any funds raised upon the sale of the property to the extent of five dollars a front foot for the land taken, such premises to have a depth to the north line of the premises as laid down and indicated on the survey filed in this action, as was originally agreed upon between Eshelman and Eichner, and in this respect the defendant Eshelman is willing to give a quitclaim deed to the purchaser on the sale of such premises to the extent indicated herein.

The referee thinks this entirely equitable and the judgment should so provide.

Objection is raised to the validity of the lien filed by the plaintiff in this action on the ground that it does not accurately describe the property against which the lien is filed. The notice described the property as located on the north side of Krehbiel road in the village of Clarence: " Bounded on the east by the property of the Clarence Centre Creamery Company, and extending along said road in a westerly direction to creek being ten acres more or less."

The description is undoubtedly rather vague, but we think it sufficiently identifies the property against which the lien is asserted. The lien, however, is asserted against the entire ten acres owned by Eshelman, and is not confined to the parcel on which the creamery is erected. It includes, however, that parcel and much more. From what the referee has already said in the course of this opinion it is manifest that the lien of the plaintiff should be confined to the particular piece agreed to be sold. Does the fact that the plaintiff claimed a lien on more than he is legally entitled to vitiate the lien so long as he embraces in his notice the part to which he has a right to assert a lien? The whole scheme of the Lien Law is to protect so far as possible those performing labor or supplying material for the improvement of property. Section 23 declares: " This article is to be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same."

28

In substance technicalities are to be disregarded. Inasmuch as the parties are before the equity branch of this court, we believe the court has the power and authority by its judgment to confine and limit the plaintiff's lien to the particular parcel on which the creamery stands, and so direct. It was held in *Hall* v. *Thomas* (111 N. Y. Supp. 979) that a lien was good although the notice described fifty feet front when it should have described twenty-five. The particular parcel so affected is described as follows: " ALL THAT TRACT OR PARCEL OF LAND, situate on the north side of Krehbiel Road and known and distinguished in the Town of Clarence, County of Erie and State of New York, and described as follows:

"BEGINNING at a point in the center of the Krehbiel Road distant (102.58) feet northwesterly from the point of intersection of the southerly line of said Lot (2) with the center of the Krehbiel Road (so-called); thence north (43°) west along the center of the Krehbiel Road (175) feet to the center of the Ransom Creek; thence north (9 degrees east (121.15) feet to the north line of Lands now owned by A. G. Eshelman; thence south (8 degrees 46 minutes and 50 seconds east along the north line of said Eshelman's land (137.91) feet; thence south (9 degrees east (229.38) feet to the place of beginning, containing (0.553) acres of land be the same more or less.

" Excepting and reserving however the right of way of the Public to that part of the above described premises lying within the bounds of the Krehbiel Road."

The liens filed by the claimants Raymond Froyer for forty-four dollars and eighty-five cents, by Clayton L. Wittlinger for one hundred and twenty-four dollars and fifty cents, and by Rolla Post for thirty-three dollars all appear to be for amounts due and owing to them as workmen, and under the provisions of section 56 of the Lien Law (as amd. by Laws of 1916, chap. 507) these liens are entitled to a preference over contractors and materialmen. The judgment in this action should so provide. The other liens should be paid out of the proceeds of sale in the order of their filing.

A formal decision should be drawn for the signature of the referee in accordance with the views above expressed. In view of the peculiar facts and circumstances of this case, the referee is of the opinion costs should be awarded to no one.