Edward M. 0 ’Gorman, J.
Petitioner condominium was formed pursuant to the provisions of the Condominium Act (Real Property Law, art. 9-B). The lienor filed a mechanic’s lien against the petitioner condominium and Amshu Associates, Inc., described in the answer herein as “Respondent” (hereinafter referred to as “ Amshu ”) a unit owner therein, for landscaping and porter services rendered to the condominium. The lienor claims that there is presently due and owing for such services the sum of $10,297.20. A dispute having arisen between petitioner and the lienor with respect to such services, 'and payment not having been made, the lien was filed against property which is known as Country Village Heights Condominium (Group I).
Petitioner now moves, pursuant to section 19 of the Lien Law, for the .summary discharge of the lien. Petitioner relies on subdivision 1 of section 339-1 of the Real Property Law which provides: “1. Subsequent to recording the declaration and while the property remains subject to this article, no lien of any nature shall thereafter arise or ¡be created against the common elements except with the unanimous consent of the unit Owners. During such period, liens may arise or be created only against the several units and their respective common interests. ’ ’
Petitioner contends that the lien is invalid, and submits proof that the unit owners in petitioner condominium did not grant unanimous consent to the lien.
It is the lienor’s contention that contracts made by the board of managers of a condominium which are within the .scope of -the board’s authority are made with ¡the implied consent of the individual unit owners, who are collectively represented by the board which they chose, and therefore the lien is valid.
This case presents both substantive and procedural questions which require- construction of pertinent- -provisions of the Condominium Act and the Lien Law.
THE VALIDITY OF THE LIEN
Subdivision 1 of ¡section 339-1, relied on by the parties, in substance provides that no lien of any nature may be created against the common elements of a condominium except with the unanimous consent of the .unit owners. The term “ lien ” includes a broad spectrum of charges upon real property, including mortgages, judgments, mechanic’s liens and similar liens. However, *1090 subdivision 2 of ¡section 339-1 deals with mechanic’s liens specifically. This subdivision provides as follows:
1 ‘ 2. Labor performed on or materials furnished to a unit •shall hot be the basis for the filing of a lien pursuant to article two of the lien law against the ¡unit of any unit owner not expressly consenting to or requesting the same, except in the case of emergency repairs. No labor performed on or materials furnished to .the common elements ¡shall be the basis for a lien thereon, but all common charges received and to be received by .the board of managers, and the right to receive such funds, shall constitute trust funds for the purpose of paying the cost of .such labor or materials performed o,r furnished at the express request or with the consent of the manager, managing agent or board of managers, and' ¡the .same shall be expended first for such purpose before expending any ¡part of the same for any •other purpose.”
It seems clear from the language in subdivision 2 that the Legislature has ¡chosen to distinguish between the rights of those performing labor on or furnishing materials to individual unit owners in a condominium, and the rights of those peforming labor on or furnishing materials to the common elements of a condominium. In the case of labor performed or materials furnished to any unit owner, there can be no lien unless the unit owner expressly consents to the lien or unless the lien is for emergency repairs to ¡such unit.
On the other hand, ¡the Legislature has prohibited the filing of a mechanic’s lien under any circumstances in the case of labor and materials furnished for the common elements of a condominium, notwithstanding -the consent of the individual unit owners. This distinction was not an accidental or unintentional result of the language used in the ¡section. It implements a sound legislative plan to prevent the undue hardship which would be imposed upon individual owner-s of condominium units if a blanket lien on their individual interests were permitted. At the ¡same time, the provision protects ¡the laborer and the material man for services rendered. To afford ¡this protection, the Legislature, in ¡the same ¡section, created a substitute for the lien which .they have prohibited. Substitute protection is afforded by constituting all common charges received and to be received by the board of managers, and their right to .receive such funds, as trust funds for ¡the purpose of paying the cost of labor and materials performed on or furnished to the common elements at the request ¡of the board of managers.
*1091 To .the extent, therefore, that the lienor seeks to impress a lien on the common elements of petitioner condominium for labor and materials furnished, the lien must be declared to be invalid under 'the provisions of section 339-1 of the Beal Property Law.
The lien in this case has also been filed against Amshu, the original ¡sponsor and developer of petitioner condominium and the present owner of several units therein. Amshu joins in the petition and avers that it neither hired the lienor to perform the work described in the notice of lien nor consented to its performing said work, or .to the imposition of the lien on its interest in the condominium. In view of the requirements of subdivision 1 of section 339-1, the lien against the individual units of Amshu is also invalid. The uncontroverted affidavit of the unit owner Amshu shows that it neither requested the services nor consented thereto or to the filing of a lien in connection therewith. There is no claim that the work was done as a result of an emergency. However, these facts do not appear on the face of the notice of lien, which circumstance will be considered hereinafter.
THE LIMITED SCOPE OF SUBDIVISION (6) OF SECTION 19 OF THE
LIEN LAW
While the uncontroverted proof on this application establishes the invalidity of the lien, the question arises as to whether the lien .may be discharged summarily, pursuant to subdivision (6) of ¡section 19 of the Lien Law. Despite the existence of a multiplicity of reasons which render invalid a mechanic’s lien, the lien may be summarily canceled only on those grounds which are specified in subdivision (6) of section 19 of the Lien Law. The ¡statute “ does not empower the courts to cancel or discharge mechanics ’ liens upon a .summary application upon any grounds other than those ¡specified in that law ” (see Matter of Supreme Plumbing Co. v. Seadco Bldg. Corp., 224 App. Div. 844; Matter of Miller [Schiavori], 133 N. Y. S. 2d 421, 422).
The grounds specified are the following: the appearance on the face of the notice of lien of the fact that the claimant has no valid lien by reason of the character of the labor or materials furnished; its invalidity by reason of its failure to comply with section 9 of the Lien Law, or that the lien was not properly filed as ¡disclosed by the public records (see Jensen, Mechanic’s Liens [4th ed.], § 311). Whether any of these three grounds are available to support the summary discharge ¡of this mechanic’s lien will now be considered.
*1092 THE CHARACTER OF THE MATERIALS AND LABOR
The notice of lien describes the labor and materials furnished as follows: “ The labor performed was Installation and maintenance of lawns, grass. The material furnished was Grass seed, sod and fertilizer.”
The petitioner contends .that the services and materials déscribed in the notice of lien cannot properly be made the subject of alien, pi that they are not materials or services furnished or performed in a permanent improvement of the property in question.
While it has been held .that somewhat .similar maintenance .services cannot properly be made the subject of a mechanic’s lien (see Matter of Magowan, 203 N. Y. S. 2d 35), the services in this case which are claimed to be landscaping services and described in the notice of lien .as ‘ ‘ installation ’ ’ of lawns as well as maintenance, may well constitute a permanent improvement of the property. However, it cannot be determined on the face of this notice what the nature of the material and labor furnished was, and that issue may not, at least in the absence of uncontroverted proof, be resolved on this motion (see Matter of Bralus Corp. v. Berger, 307 N. Y. 626).
THE MANNER OF FILING
This case presents no issue as to the manner in which this lien wais filed.
COMPLIANCE WITH SECTION 9 .OF THE LIEN LAW
The remaining basis for the summary cancellation of this lien is a failure .to comply with section 9 of the Lienz Law. Section 9 provides in pertinent parts as follows:
‘ ‘ 9. The notice of lien shall state: * * *
“2. The name of the owner of the real property against whose interest therein a lien is claimed, and the interest of the owner as far as known to the lienor. * * *
“ 7. The .property ¡subject to the lien, with a description ■thereof .sufficient for identification; and if in a city or village, its location by .street and number, if known. A failure to state the name of .the true owner or contractor, or a misdescription of the true owner, shall not affect the validity of the lien.”
COMPLIANCE WITH SUBDIVISION 2 OF SECTION 9 OF THE LIEN LAW
By statute, the condominium named in the notice of lien has no interest in the fee of the .premises (Real Property Law, §§ 339-h, 339-i). Amshu has a fee interest in the units of the condominium which it owns, and an undivided fee interest *1093 in the common elements of the condominium. However, the uncontroverted affidavits submitted in this ca-se establish that Amshu is but one of several owners of units in the condominium. It seems clear, ¡therefore, that the lien as filed is defective in that it has named as an owner of the fee one which has no interest therein, and has failed to name all but one of the ■owners of the fee of the premises described (see Gates d Co. v. National Fair and Exposition Assn., 225 N. Y. 142). To the extent that-fit has any validity, the lien can affect the interest of the unit owner Amshu only.
COMPLIANCE WITH SUBDIVISION -7 0E SECTION 9 0E THE LIEN LAW
Assuming that the description of Amshu as an owner of the premises was a 'sufficient, compliance with subdivision 2 of section 9 of the Lien Law, the notice of lien must also contain a description of the property subject to .the lien which is sufficient for identification. The courts have construed this section liberally, and have not required technical accuracy in every case. The test generally applied to determine the adequacy of a description used in .the notice of lien has been simply stated; “ All .that is required is a description that identifies.” (Jannotta v. Noslac Realty Corp., 231 App. Div. 864; see, also, Kolkman v. Eshelman, 132 Misc. 428.)
Applying this test to a lien filed against the unique legal entity created by the Condominium Act, the court is of the ■opinion that the description is inadequate. It fails to limit the lien to the particular units in the condominium, if any, which this lienor claims to be .the subject of its lien. To permit the lien to affect the entire condominium property by the description in this notice, on the basis of an alleged claim against an individual unit owner, can work great hardship on the remaining unit owners in the condominium. Neither a liberal construction of the Lien Law nor a policy of leniency in imposing technical limitations on property descriptions can justify such a .result. The court therefore finds that the lien is also invalid as against Amshu for failure .to comply with subdivision 7 of section 9 of the Lien Law.
In view of the conditions .precedent placed on the right to a mechanic’s lien in .section 339M of the Beal Property Law, which became effective in March of 1964, it would seem desirable that section 9 of the Lien Law, in effect prior thereto, be amended by .appropriate legislation to require a lienor who intends to file a lien against units of a condominium created pursuant to the Condominium Act, to describe in the notice of lien the units *1094 against which, the lien is claimed, and the fact that the unit owners named have consented to the lien. As section 9 is presently drawn, .such an amendment would provide machinery for the summary disposition, at the threshold of the litigation, of ■a lien where an issue is raised concerning the fulfillment of the necessary conditions precedent. In this case, the lack of consent of the individual unit owners to the lien was not a defect apparent on the face of the lien, and was not made the basis of the summary discharge granted herein, although there is some authority for such summary discharge where the proof is uncontroverted, as in .this case (see Matter of Oster, 31 Misc 2d 253; Matter of Jory Constr. Corp. v. Westchester Sq. Sash & Door Co., 6 Misc 2d 701). The suggested amendment of section 9 would not limit the .right to summary relief to cases in which the facts concerning these basic conditions are uncontroverted.
The application to cancel the ¡mechanic’s lien herein will be granted.